UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN YOW, | : | **1:19-CV-01042** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| CORRECTIONAL OFFICER S. ROBERTSON, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **MEMORANDUM OPINION**

**I. Introduction.**

A fellow prisoner slashed Plaintiff Kevin Yow in the back with a razor while in the showers. Yow claims that several of the corrections officer defendants failed to protect him in violation of the Eighth Amendment. Yow also claims that other defendants violated the First Amendment by retaliating against him because he filed grievances about the shower incident and about events after the shower incident. Because we previously granted the defendants summary judgment as to the Eighth Amendment failure-to-protect claim, only the First Amendment retaliation claims remain. Currently pending is the defendants' motion for summary judgment as to those retaliation claims. For the reasons discussed below, we will grant in part and deny in part the motion for summary judgment.

## II. Background and Procedural History.

Yow, through his counsel, began this action by filing a complaint. After Yow amended the complaint several times, the operative complaint is the Third Amended Complaint naming the following individuals as defendants: (1) Correctional Officer Robertson; (2) Correctional Officer Macking; (3) Security Lieutenant Gardzalla; (4) Correctional Officer Mabin; (5) Correctional Officer DeLuca; and (6) Correctional Officer John Doe 2.

Yow alleges that in July 2017, in the showers in the Restricted Housing Unit ("RHU") at the State Correctional Institution at Dallas, inmate Kalief Shelton reached through the open wicket between the shower he was in and the shower that Yow was in and slashed Yow in the back with a razor blade. Yow alleges that after he filed a grievance about the shower incident, defendants Mabin and Gardzalla searched his cell, strip searched him, threatened him with pepper spray, and confiscated a religious text. And, according to Yow, after he filed a grievance about those events, defendant Gardzalla ordered John Does 1 and 2[1] to search his cell, during which search those officers destroyed or defaced Yow's property.

---

[1] The caption of the Third Amended Complaint specifically names only one Doe defendant—Correctional Officer John Doe 2—as a defendant. *See doc. 28* at 1, 3 ¶ 10. And in his Third Amended Complaint, Yow states: "This Amendment adds Defendant Correctional Office[r] DeLuca as the initial John Doe and removes John Doe 1." *Id*. at 2. Given this, the reference in the body of the Third Amended Complaint to John Doe 1 is unclear.

Yow then called his mother to complain. And Yow alleges that the day after the second search, he received a misconduct for unauthorized use of the telephone and for threatening defendant Gardzalla.[2]

The Third Amended Complaint contains two counts. In Count I, Yow claims that defendants Robertson, DeLuca, and Macking violated the Eighth Amendment by failing to protect him from Shelton. In Count II, Yow claims that defendants Mabin and Gardzalla retaliated against him in violation of the First Amendment.[3]

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. After the discovery deadline passed but within the deadline set for the filing of dispositive motions, the defendants filed a motion for summary judgment. We granted in part and denied in part that motion: We granted summary judgment to defendants Robertson, DeLuca, and Macking as to the Eighth Amendment claim, and we denied summary judgment as to the retaliation claims against defendants Gardzalla and Mabin. Although we denied summary judgment as to the retaliation claims, we did so

---

[2] The Third Amended Complaint refers to "Garzales." *Doc. 28* ¶ 56. From the context, however, it appears that this reference was meant as a reference to defendant Gardzalla.

[3] Although John Doe 2 is named as a defendant in the Third Amended Complaint, *see* n.1, the Third Amended Complaint does not list John Doe 2 as a defendant as to either Count I or Count II. *See doc. 28* at 8.

3

without prejudice to Gardzalla and Mabin filing another motion for summary judgment addressing that retaliation claims.  On July 29, 2021, defendants Mabin and Gardzalla filed another motion for summary judgment, which has been fully briefed.  For the reasons set forth below, we will grant in part and deny in part that motion.

### III.  Summary Judgment Standards.

The defendants[4] move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

---

[4] Unless noted otherwise, when we refer to the defendants, we are referring to defendants Mabin and Gardzalla.

*Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

**IV. Material Facts.**

The following facts are the material facts for purposes of the pending summary judgment motion.[5]

---

[5] Here, in accordance with Local Rule 56.1, the defendants filed a statement of material facts, and Yow filed a response. Where the facts are undisputed, we cite to the defendants' statement of material facts (*doc. 62*) and Yow's response thereto (*doc. 64-1*). In accordance with our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), where Yow disputes a fact set forth in the defendants' statement of

7

In July 2017, Yow was incarcerated at the State Correctional Institution at Dallas, where defendants Gardzalla and Mabin were employed. *Doc. 62* ¶¶ 1, 3; *Doc. 64-1* ¶¶ 1, 3.  Yow was involved in an incident on July 14, 2017, in the showers of the RHU at SCI Dallas ("the shower incident"). *Doc. 62* ¶¶ 4, 5; *Doc.64-1* ¶¶ 4, 5.  Although Defendants Gardzalla and Mabin were not involved in that incident, they became aware of the incident after the fact. *Doc. 64-1* ¶ 5.

While he was still in the RHU, Yow "unsuccessfully" attempted to file a grievance regarding the shower incident by asking for a grievance form, filling out the grievance form, and giving it to a night shift guard. *Id.*  But he never got a return copy. *Id.*  Yow also informed guards in the RHU that he intended to pursue legal action regarding the shower incident. *Id.*  Yow was released from the RHU on or around July 19, 2017. *Id.*

On July 24, 2017, defendants Gardzalla and Mabin searched Yow's cell. *Doc. 62* ¶ 6; *Doc. 64-1* ¶ 6.  The search was investigative in nature. *Doc. 62* ¶ 7; *Doc. 64-1* ¶ 7.  Yow asked Gardzalla what the search was about, and he replied: "You know what this is about." *Doc. 64-1* ¶ 7.  Yow assumed that meant the search was retaliatory. *Id.*

---

material facts and he cites record evidence creating a genuine factual dispute, we cite to Yow's version of the fact.  When citing to page numbers of a document, we use the page numbers from the CM/ECF header on the top of the document.

During the search on July 24th, an Islamic text, which defendant Gardzalla thought might be a radicalization of Islam, was confiscated. *Doc. 62* ¶ 9; *Doc. 64-1* ¶ 9. No confiscation slip was given to Yow. *Doc. 64-1* ¶ 9. Yow repeatedly asked Gardzalla about returning the text, and although Gardzalla said he would return the text, he never did. *Id*. The text was not returned until months later after Yow filed a grievance and the grievance reached the central-office level. *Id*.

On July 28, 2017, Yow filed a grievance about the shower incident. *Doc. 62* ¶ 4; *Doc. 64-1* ¶ 4. And on August 9, 2017, he filed a grievance about the July 24th search and confiscation of his religious text. *Doc. 62* ¶ 10; *Doc. 64-1* ¶ 10.

In January 2018, Yow's cell was again searched. *Doc. 62* ¶ 10; *Doc. 64-1* ¶ 10. During this search, some of Yow's personal items, including food, pictures, and clothes, were damaged or destroyed. *Doc. 64-1* ¶ 10. Later that evening, Lieutenant Mushalia apologized to Yow for the search. *Id*.

Following the January 2018 search, Yow received a misconduct, and he was put back in the RHU. *Id*. Yow asked for a transfer because of his problems with defendant Gardzalla. *Id*. He was transferred out of SCI Dallas on May 21, 2018. *Doc. 62* ¶ 2; *Doc. 64-1* ¶ 2.

## V. Discussion.

Defendants Gardzalla and Mabin seek summary judgment in their favor as to Yow's retaliation claims against them.

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012), *abrogated on other grounds by* 912 F.3d 79, 96 (3d Cir. 2018). "To [establish] a First Amendment retaliation claim, a prisoner plaintiff must [establish] (1) 'that the conduct which led to the alleged retaliation was constitutionally protected'; (2) 'that he suffered some "adverse action" at the hands of the prison officials'; and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him,' or more specifically, 'that his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

"Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002) (quoting *Rauser*, 241 F.3d at 334). Prison officials may prevail by proving that they would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest. *Rauser,* 241 F.3d at 334.

Yow complains about three incidents: (1) the events of July 24, 2017; (2) the January 2018 search; and (3) the misconduct issued after the January 2018 search. We address each in turn.

### A.  The Events of July 24, 2017.

The defendants contend that they are entitled to summary judgment as to the events of July 24, 2017, because Yow does not have evidence of a causal connection between his protected conduct and those events.

In a retaliation case, there are generally "three avenues to establish causation." *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361 (3d Cir. 2021). "First, 'an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action' can establish causation." *Id*. (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  "Second, 'a pattern of antagonism coupled with timing' may establish a causal link." *Id*. at 362 (quoting *DeFlaminis*, 480 F.3d at 267)).  Third, "the record as a whole may reveal evidence implying causation." *Id*.

Yow alleged in his third amended complaint that after he filed a grievance regarding the shower incident, defendants Gardzalla and Mabin threatened to

pepper spray him, strip searched him, searched his cell, and confiscated a religious text. But as the defendants point out, Yow did not file a grievance regarding the shower incident until July 28, 2017. Obviously, something that did not happen until July 28, 2017 (the filing of the grievance), cannot be a substantial or motivating factor in the decision to act on July 24, 2017.

Yow counters that he unsuccessfully attempted to file a grievance regarding the shower incident before the events of July 24th. In this regard, he contends while he was still in the RHU, he unsuccessfully attempted to file a grievance regarding the shower incident by asking for a grievance form, filling out the grievance form, and giving it to a night shift guard, but he never got a return copy. Yow also informed guards in the RHU that he intended to pursue legal action regarding the shower incident. Yow was released from the RHU on or around July 19, 2017.

But the problem for Yow is that he has not pointed to evidence that either defendant Gardzalla or defendant Mabin were aware of his statements or attempt to file a grievance while still in the RHU. "It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Township of Robinson,* 303 F.3d 488, 493 (3d Cir. 2002). In other words, a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals

12

responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015). Here, because Yow has not shown that the defendants were aware of his attempt to file a grievance or his statements that he was going to take legal action, made before he was released from the RHU on July 19, 2017, Yow has not raised a reasonable inference that his attempt or his statements were a substantial or motivating factor in the decision to act on July 24, 2017.

Yow points out that during the search on July 24th, he asked Gardzalla what the search was about, and Gardzalla replied: "You know what this is about." *Doc. 64-1 ¶ 7*. Yow assumed that meant the search was retaliatory. *Id.* Yow testified about why he concluded that the search was retaliatory:

> Q. . . . Why did you come to that conclusion?
> A. Because I seen how Dallas, in particular, treat other people when they find other people that file grievances and stuff like that.
> Q. Okay.
> And can you give me a specific example?
> A. Like, they might want you to drop a grievance.
> Q. Okay.
> A. And if you don't drop the grievance and you continue to do what you want to do, they're going to make your stay there hell.
> Q. Okay.
> A. They're going to strip search you, shake your cell down, mess up your property, anything they can do.

*Doc. 62-1* at 59–60.  The defendants assert that Yow's testimony about why he concluded that the search was retaliatory was vague, and he was unable to point to specific examples to support his assumption.

Without evidence that Gardzalla was aware of Yow's unsuccessful attempt to file a grievance or his statements while in the RHU, Gardzalla's statement about Yow knowing what the search was about does not raise a reasonable inference that the search was connected to Yow's protected legal activities.  And Yow's assumption that it was retaliatory is speculation.  Accordingly, Yow has not presented evidence from which a reasonable trier of fact could conclude that the events of July 24th were retaliation for Yow's protected legal activities.

Similarly, although Yow asserts that he asked defendant Gardzalla to return his religious text numerous times, he has not pointed the court to evidence as to when he made those requests or when, if ever, Gardzalla became aware of the grievances that Yow filed.  Thus, Yow has not pointed to evidence that raises a reasonable inference that his filing of grievances was a substantial or motivating factor in Gardzalla's failure to return the text.

In sum, we will grant defendants Gardzalla and Mabin summary judgment as to the retaliation claim based on the events of July 24, 2017.[6]

---

[6] Since the defendants are entitled to summary judgment as to this claim and because Yow has not pointed to evidence raising a reasonable inference of causation, we do not address the defendants' other arguments regarding this claim.

### B. The January 2018 search.

Defendants Gardzalla and Mabin contend that they are entitled to summary judgment as to the January 2018 search because they were not personally involved in this search.

Liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)).  Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

Here, Yow has not pointed to any evidence that defendant Mabin was personally involved in the January 2018 search.  Thus, we will grant defendant Mabin summary judgment as to the retaliation claim based on this search.

Yow contends that defendant Gardzalla supervised the January 2018 search. Yow testified that two corrections officer conducted the search, and defendant Gardzalla arrived after the search was completed:

> A.    The two COs that carried that search out, I'm not familiar with their name[s], but they had ID tags on.

15

>    . . .
>    Q.   . . . But Gardzalla was there?
>    A.   He came after the fact.
>    Q.   Okay.
>         So it were [sic] these two unknown COs who did the actual search?
>    A.   Yeah, because he's lieutenant of security, so he don't actually shake cells down.
>    Q.   Okay.
>    A.   But the people that work up under him, he sends them to shake the cells down.

*Doc. 62-1* at 69. Yow also testified about why he believed the search to be

retaliation:

>    Q.   And why did you believe that incident was retaliation for previous incidents?
>    A.   Because it was repetitive in going through with Lieutenant Gardzalla. He even went and said certain things. Little smart remarks he had said, you're not going home. I'm going to do everything in my power to keep you from going home.
>         . . .
>    Q.   . . . Did anyone specifically say we are doing this because you filed grievances or because of the book or anything like that?
>    A.   Specifically, Gardzalla. And I said — I know they had an issue with you. I don't know you personally, and one of his remarks was, I'm doing my job. You filed a grievance, whoever don't like you, that's not my problem. I'm doing what I'm told.
>    Q.   Okay.
>         He said he was doing what he was told?
>    A.   Yeah.
>    Q.   Okay.
>         What specifically did he say about you filing grievances?

16

>   A. That's the only remark that I had from him that I can say verbatim. As far as like him going and elaborating on anything else, I don't know.

*Doc. 62-1* at 75–78.

Although sparse, Yow's testimony asserts that Gardzalla arrived after the search was completed and that Gardzalla made comments that could be construed as suggesting that he was responsible for the search. Construing Yow's testimony in the light most favorable to him, as we must when considering a summary judgment motion, Yow has presented enough facts from which a reasonable trier of fact could conclude that defendant Gardzalla was responsible for the search. Thus, defendant Gardzalla is not entitled to summary judgment based on lack of personal involvement.

Defendant Gardzalla also contends that he is entitled to summary judgment as to the January 2018 search because Yow cannot show that his filing of grievances was causally related to the search. Gardzalla acknowledges Yow's testimony, set forth above. But contending that Yow has attributed to him only vague statements, Gardzalla suggests that Yow has not presented specific information linking the search to Yow's grievances. Yow testified, however, that Gardzalla made a statement after the search suggesting that the search was related to a grievance: "You filed a grievance, whoever don't like you, that's not my problem. I'm doing what I'm told." *Doc. 62-1* at 77. Again, Yow's testimony is

17

thin, but we are required to construe it in the light most favorable to him, and so construing it, Yow has presented evidence from which a reasonable trier of fact could conclude that Yow's prior grievance was a motivating factor in the search. Accordingly, we will deny defendant Gardzalla summary judgment as to the retaliation claim relating to the January 2018 search.

### C. The Misconduct.

In his third amended complaint, Yow alleges that he was issued a misconduct the day after the January 2018 search. And Yow asserts in his brief that there is an issue of fact about whether that misconduct was retaliatory. But the defendants do not address the misconduct at all. Thus, we will deny defendants Gardzalla and Mabin summary judgment as to the retaliation claim based on the misconduct.

## VI. Conclusion.

Based on the foregoing, we will grant in part and deny in part the defendants' motion for summary judgment. More specifically, we will grant defendant Gardzalla and defendant Mabin summary judgment as to the retaliation claim based on the events of July 24, 2017, and we will grant defendant Mabin summary judgment as to the retaliation claim based on the January 2018 search. We will deny defendant Gardzalla summary judgment as to the retaliation claim

based on the January 2018 search, and we will deny defendant Gardzalla and defendant Mabin summary judgment as to the retaliation claim based on the misconduct. An appropriate order will issue.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge